1   Josh Reid
    Nevada Bar No. 7497
2   **FENNEMORE CRAIG, P.C.**
    300 South Fourth Street, Suite 1400
3   Las Vegas, Nevada 89101
    Telephone:  (702) 692-8000
4   Facsimile:  (702) 692-8099
    Email:  jreid@fennemorelaw.com
5
    Eric L. Maassen
6   (*Pro Hac Vice Forthcoming*)
    William J. McKenna
7   (*Pro Hac Vice Forthcoming*)
    Tanya C. O'Neill
8   (*Pro Hac Vice Forthcoming*)
    **FOLEY & LARDNER LLP**
9   777 E. Wisconsin Ave.
    Milwaukee, WI  53202
10  Telephone: (414) 271-2400
    Facsimile: (414) 297-4100
11  Email: emaassen@foley.com
           wmckenna@foley.com
12         toneill@foley.com

13  *Attorneys for Plaintiff Le Petomane XXVII, Inc., not*
    *individually, but solely in its representative capacity*
14  *as trustee of the Nevada Environmental Response*
    *Trust*
15
                **UNITED STATES DISTRICT COURT**
16
                    **DISTRICT OF NEVADA**
17

| | |
|---|---|
| 18  LE PETOMANE XXVII, INC., an Illinois corporation, not individually, but solely in its representative capacity as trustee of the Nevada Environmental Response Trust, | Case No.: |
| 20            Plaintiff, | **COMPLAINT** |
| 22  v. | **JURY DEMAND** |
| 23  AMERICAN PACIFIC CORPORATION, a Nevada corporation, | |
| 25            Defendant. | |

26          Plaintiff, Le Petomane XXVII, Inc., not individually, but solely in its representative

27  capacity as trustee of the Nevada Environmental Response Trust ("Trustee"), as and for its

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

18524410.1/055931.0001

1  Complaint against Defendant American Pacific Corporation ("AMPAC" or "Defendant"), alleges
2  and states as follows:

3  <center>**Nature of the Action**</center>

4      1.    This action is brought under the provisions of the Comprehensive Environmental
5  Response, Compensation and Liability Act, as amended, 42 U.S.C §§ 9601 et seq. ("CERCLA").
6  The Trustee on behalf of the Nevada Environmental Response Trust ("NERT") seeks, among other
7  relief:

8      (a) recovery from AMPAC under CERCLA Section 107(a) of response costs expended, and
9  to be expended, by NERT with respect to the Weir Project, as defined herein;

10      (b) contribution from AMPAC under CERCLA Section 113(f) for response costs expended,
11  and to be expended, by NERT with respect to the Weir Project, as defined herein;

12      (c) contribution under Nevada Revised Statutes Section 17.225; and,

13      (d) compensatory relief for unjust enrichment.

14      2.    In 2017, NERT was ordered by the Nevada Division of Environmental Protection
15  ("NDEP") to undertake a removal action related to perchlorate in the Las Vegas Wash, a tributary
16  to Lake Mead, in connection with the Southern Nevada Water Authority's ("SNWA") construction
17  of two erosion control weirs in the Las Vegas Wash.  To date, NERT has spent over $36 million
18  (with work ongoing related to decommissioning and costs continuing to accrue) to build, operate,
19  and decommission the pumping and treatment facilities to treat the perchlorate in groundwater
20  associated with SNWA's dewatering activities.

21      3.    Subsequent to completing the removal action, NERT discovered that the vast
22  majority of the perchlorate treated by NERT as part of the removal action originates from a former
23  manufacturing site that was owned and operated by Defendant AMPAC and its corporate
24  predecessor, Pacific Engineering & Production Co. of Nevada ("PEPCON").  NERT has spent the
25  majority of the $36 million to treat hazardous substances for which AMPAC is legally responsible.

26      4.    By this action, NERT seeks to recover from AMPAC the response costs that NERT
27  incurred to treat AMPAC's perchlorate.  NERT also seeks a declaratory judgment that Defendant
28  is liable for future response decommissioning costs or damages.

1

**The Parties**

2        5.        Plaintiff is the trustee of NERT, which is a trust that was established on February

3 14, 2011 in connection with the confirmation of Tronox LLC's (formerly known as Kerr-McGee

4 Chemical LLC) ("Tronox") Chapter 11 bankruptcy filed in the U.S. Bankruptcy Court for the

5 Southern District of New York, in January 2009.  The Trustee is a corporation organized and

6 existing under the laws of the State of Illinois with its headquarters and principal executive offices

7 located in Chicago, Illinois, is the sole trustee of NERT and administers NERT under the terms of

8 a written Trust Agreement.

9        6.        NERT's primary purpose is to own Tronox's former chemical manufacturing

10 facility located approximately 13 miles southeast of the City of Las Vegas in an unincorporated

11 area of Clark County, Nevada ("Henderson Site") and to remediate certain environmental impacts

12 at or migrating from the Henderson Site.

13        7.        The Trustee brings this suit, not individually, but solely in its representative capacity

14 as trustee of the Trust.  The Trustee is a citizen of the State of Illinois and of no other state.

15        8.        Defendant AMPAC, the corporate successor to PEPCON, is a corporation organized

16 under the laws of the State of Nevada, with a principal place of business located at 10622 West

17 6400 North, Cedar City, Utah 84721.  AMPAC is a citizen of the State of Nevada and of the State

18 of Utah and no other state.

19        9.        PEPCON formerly owned and, until 1988, operated a chemical manufacturing

20 facility approximately one and a half miles west of the Henderson Site (the "AMPAC Site").

21

**Jurisdiction and Venue**

22        10.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal

23 question jurisdiction); Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a), and 9613(b)

24 (CERCLA grant of jurisdiction); 28 U.SC. § 1367 (Supplemental Jurisdiction); and 28 U.S.C. §

25 1332 (Diversity Jurisdiction) in that this is a civil action where the matter in controversy exceeds

26 the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different

27 States.  A trust "has the citizenship of its trustee or trustees." *Johnson v. Col. Props. Anchorage,*

28 *LP*, 437 F.3d 894, 899 (9th Cir. 2006).  The Trustee is the Plaintiff.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

- 3 -

18524410.1/055931.0001

1    11.    The Trustee is an Illinois corporation with its headquarters in Chicago, Illinois;

2    because its "nerve center" is in Illinois, it is a citizen of that state for diversity purposes.

3    12.    AMPAC is a Nevada corporation with its headquarters in Cedar City, Utah; and

4    because its "nerve center" is in Utah, it is a citizen of that state for diversity purposes.

5    13.    Section 1332(a)(2) "provides district courts with original jurisdiction of all civil

6    actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens

7    of a state and citizens or subjects of a foreign state." *JPMorgan Chase Bank v. Traffic Stream (BVI)*

8    *Infrastructure Ltd.*, 536 U.S. 88, 91 (2002) (internal quotation marks and ellipses omitted).

9    Therefore, the parties are citizens of different states for purposes of diversity.  This action is of a

10   civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.00.  Every issue

11   of law and fact in this action is wholly between a plaintiff who is a citizen of a state that is different

12   from the state of which a defendant is a citizen.

13   14.    Because of the federal question jurisdiction, this Court also has supplemental

14   jurisdiction pursuant to 28 U.S.C. § 1367(a)-(b) over the state law claims asserted against the

15   defendant, regardless of the amount in controversy.

16   15.    This Court has general personal jurisdiction over AMPAC because it is organized

17   and exists under Nevada's corporate laws, *i.e.,* Nevada Revised Statutes Title 7.

18   16.    This Court also has specific personal jurisdiction over AMPAC because it has

19   purposefully availed itself of the laws and protections of this forum by conducting business here

20   by registering with the Nevada Secretary of State as a corporation.

21   17.    Under these circumstances, the exercise of jurisdiction over AMPAC would be

22   reasonable.

23   18.    Venue lies in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. §

24   9613(b), and 28 U.S.C. § 1391(b), because the properties at issue are located within this judicial

25   district, the releases or threatened releases of solid or hazardous wastes or hazardous substances or

26   materials occurred in this judicial district, a substantial part of the events or omissions giving rise

27   to the claim occurred in this district, and a substantial part of the property that is the subject of the

28   action is situated in this district.

1      19.    Venue lies in the unofficial Southern Division of this Court.

2      **Factual Background**

3      **A.    Historic Operations, Contaminants, and Environmental Response Activities at**

4          **the AMPAC Site**

5      20.    The PEPCON facility was built near Henderson, Nevada in or about 1958. In 1997,

6  PEPCON merged with, and into AMPAC Development Company, which changed its name to

7  AMPAC, Inc. In 1998, AMPAC, Inc. merged with, and into American Pacific Corporation.

8      21.    From approximately 1958 through 1988, perchlorate was produced at the AMPAC

9  Site. Operations at the AMPAC Site terminated on or about May 4, 1988.

10     22.    During the time PEPCON and AMPAC owned and operated the AMPAC Site, spills

11  and releases of hazardous substances at the AMPAC Site contaminated soil and groundwater at,

12  and beneath the AMPAC Site. Perchlorate contamination in groundwater has been identified at,

13  and emanating from the AMPAC Site.

14     23.    AMPAC installed and operated a perchlorate remediation system to remove

15  perchlorate from groundwater migrating from the AMPAC Site.

16     24.    Notwithstanding the treatment system installed and operated by AMPAC, not all of

17  AMPAC's perchlorate in groundwater is captured by the treatment system and continues to migrate

18  to the north into the Las Vegas Wash.

19      **B.    Historic Operations, Contaminants, and Environmental Response Activities at**

20          **the Tronox Henderson Site**

21     25.    The Henderson Site was developed in 1942 by the U.S. government as a magnesium

22  production plant in support of the World War II effort. Perchlorate was produced at the Henderson

23  Site beginning in 1952 and ending in 1998.

24     26.    Tronox, the former owner of the Henderson Site, began investigating potential

25  environmental impacts in July 1981 from both current and historic operations.

26     27.    In the late 1990s, Tronox installed a seep water collection system adjacent to the

27  Las Vegas Wash to mitigate the discharge of perchlorate into the Las Vegas Wash and a treatment

28  system to treat the collected perchlorate-impacted groundwater.

1    28.    In 2001, Tronox installed a groundwater extraction system downgradient of the

2  Henderson Site and in 2004, a groundwater treatment system at the Henderson Site. All perchlorate

3  in groundwater associated with historic releases migrating from the Henderson Site are captured by

4  the groundwater treatment system at the Henderson Site.

5    **C.    Early Perchlorate Detection and Study in the Colorado River and Las Vegas**

6    **Wash**

7    29.    The Las Vegas Wash is a tributary which flows into Lake Mead and the Colorado

8  River system, which affects approximately 30 million end water users in Nevada, Arizona, and

9  California. In the late 1990s, perchlorate was detected in the Lower Colorado River Basin system.

10    30.    Based on sampling conducted by SNWA and others, the occurrence of perchlorate

11  in the Lower Colorado River Basin system was determined to have originated in the Las Vegas

12  Wash. In the late 1990s, perchlorate loadings of up to 1,000 pounds per day were shown to be

13  entering the Colorado River system.

14    **D.    Southern Nevada Water Authority Weir Project**

15    31.    In the late 1990s, SNWA, a collection of local agencies which address water issues

16  on a regional level in Nevada, developed the Las Vegas Wash Stabilization Program to protect

17  wetlands, reduce erosion, intercept contamination, minimize sediment transport to Lake Mead,

18  create recreation opportunities, and restore habitat in the Las Vegas Wash.

19    32.    Pursuant to this program, SNWA constructed a number of permanent grade

20  stabilization weirs within the Clark County Wetlands Park. A grade stabilization weir is a physical

21  barrier placed in a waterbody with the primary purpose to control flow to reduce erosion. In the

22  late 2000s, SNWA proposed to construct additional weirs within the Las Vegas Wash near Clark

23  County Wetlands Park as part of this stabilization program.

24    33.    Two of the weirs, the Sunrise Mountain Weir and the Historic Lateral Weir, are

25  located downgradient of the AMPAC Site and the Henderson Site. The weir construction project

26  required SNWA to "dewater" the construction site areas by extracting groundwater in the vicinity

27  of the Sunrise Mountain Weir and the Historic Lateral Weir ("Weir Project").

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

- 6 -

18524410.1/055931.0001

1    34.    The groundwater extracted during the Weir Project was projected to contain

2    approximately three tons of perchlorate.

3    35.    NDEP determined that direct discharge of the groundwater from the Weir Project

4    into the Las Vegas Wash without treatment would substantially contribute to the continued

5    exceedance of the Nevada provisional maximum contaminant level for perchlorate of 18 parts per

6    billion within the Las Vegas Wash, and that any increase in perchlorate loading to the Las Vegas

7    Wash, a tributary to Lake Mead, and to the Colorado River, would threaten the environment and

8    drinking water sources for the Las Vegas Valley and for populations in Arizona and Southern

9    California.

10    36.    On April 12, 2016, given that treating groundwater extracted during the Weir Project

11    was a time-critical removal action, NDEP ordered NERT to provide NDEP with an Engineering

12    Evaluation/Cost Analysis ("EE/CA") evaluating the cost, feasibility, evaluation of remedial

13    alternatives, schedule, and permitting requirements for transferring, conveying and treating

14    groundwater extracted during the Weir Project before discharge into the Las Vegas Wash.  A copy

15    of the order is attached as Ex. A.

16    37.    On August 30, 2016, NERT submitted an EE/CA to NDEP evaluating the cost,

17    feasibility, evaluation of remedial alternatives, schedule, and permitting requirements for

18    transferring and treating groundwater extracted during the Weir Project. The EE/CA was released

19    for public comment and no public comments were received.

20    38.    Based on NDEP's review of the current groundwater data, NDEP believed the Weir

21    Project was located in an area of the Las Vegas Wash where the perchlorate groundwater plume

22    from the Henderson Site intersects the Las Vegas Wash.

23    39.    On March 3, 2017, NDEP ordered NERT to perform a removal action to treat

24    perchlorate-impacted groundwater generated during SNWA's dewatering associated with the Weir

25    Project ("Weir Order"). NDEP determined that any increase in perchlorate loading to the Las Vegas

26    Wash, a tributary to Lake Mead, and to the Colorado River, would threaten the environment and

27    drinking water sources for the Las Vegas Valley and for populations in Arizona and Southern

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

18524410.1/055931.0001

1    California. The Weir Order required NERT to construct a treatment plant capable of treating 6,900

2    gallons per minute.  A copy of the Weir Order is attached as Ex. B.

3          40.    Dewatering operations at the Sunrise Mountain Weir and the Historic Lateral Weir

4    occurred from January 2018 to August 2018.  During the dewatering operations, NERT

5    continuously operated the treatment plant it constructed consistent with the Weir Order.

6          41.    In or about March 2017, Geosyntec Consultants, Inc. prepared a Technical

7    Memorandum and submitted it to NDEP, that assessed and evaluated the capture zone created by

8    AMPAC's existing treatment system of the groundwater migrating from the AMPAC Site to the

9    Las Vegas Wash.  The purpose of this analysis was to determine if any perchlorate impacted

10   groundwater "escaped" the capture zone of AMPAC's system.  Based on the data presented in the

11   Technical Memorandum, NERT determined for the first time, that the vast majority of the

12   perchlorate contamination in the groundwater that originated from the AMPAC Site, which was

13   not otherwise captured by the AMPAC treatment system, flowed in the immediate vicinity of the

14   Weir Project. This contaminated groundwater was the water that SNWA extracted through the Weir

15   Project construction and NERT was treating.

16         42.    Subsequent investigations by NERT, including particle flow analysis and chemical

17   "fingerprinting" of the perchlorate plumes emanating from the AMPAC Site and the Henderson

18   Site and extending to the vicinity of the Weir Project, confirmed that the vast majority of the

19   perchlorate treated by NERT as part of the Weir Project, originated from the AMPAC Site.

20   Through the chemical analysis, NERT determined that the perchlorate migrating from the AMPAC

21   Site and the perchlorate migrating from the NERT Site are chemically distinct due to the difference

22   in levels of chlorate.

23         43.    The hazardous substances released at the AMPAC Site have contaminated

24   groundwater in the vicinity of the AMPAC Site, the vicinity of the Weir Project and the Las Vegas

25   Wash, and NERT has incurred necessary response costs as a result of the release of hazardous

26   substances from AMPAC's site.  Accordingly, the Trustee, on behalf of NERT, seeks recovery of

27   and contribution for response costs from AMPAC.

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

- 8 -

18524410.1/055931.0001

1 **FIRST CAUSE OF ACTION**

2 **(Cost Recovery Under Section 107 of CERCLA)**

3      44.     Plaintiff repeats and re-alleges all of the foregoing allegations and incorporates the

4 same by this reference.

5      45.     Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides that any

6 "covered person . . . shall be liable for . . . any other necessary costs of response incurred by any

7 other person consistent with the national contingency plan [the ("NCP")]."

8      46.     NERT is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C.

9 § 9601(21).

10     47.     Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42

11 U.S.C. § 9601(21).

12     48.     The Henderson Site is a "facility" within the meaning of Section 101(9) of

13 CERCLA, 42 U.S.C. § 9601(9).

14     49.     The AMPAC Site is a "facility" within the meaning of Section 101(9) of CERCLA,

15 42 U.S.C. § 9601(9).

16     50.     Perchlorate, discovered at and downgradient of the Henderson Site and the AMPAC

17 Site is a "hazardous substance" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. §

18 9601(14).

19     51.     During the time that PEPCON and AMPAC owned the AMPAC Site, disposal of

20 hazardous substances occurred at the AMPAC Site within the meaning of Section 101(29) of

21 CERCLA, 42 U.S.C. § 9601(29).

22     52.     Releases of hazardous substances have occurred at the AMPAC Site within the

23 meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and have caused NERT to incur

24 costs in response to those releases.

25     53.     AMPAC is liable under CERCLA as an "owner" or "operator."  An owner or

26 operator includes "any person owning or operating [an onshore facility]," and "any person who at

27 the time of disposal of any hazardous substance owned or operated any facility at which such

28

hazardous substances were disposed of."   Sections 107(a)(1) – (2) and 101(20)(A)(ii) under

CERCLA, 42 U.S.C. §§ 9607(a)(1) – (2) and 9601(20)(A)(ii).

54.     NERT has undertaken, and continues to undertake, actions at the Las Vegas Wash within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in response to releases or threatened releases of hazardous substances.

55.     NERT has incurred more than $36 million in costs, which constitute "necessary costs of response" incurred in a manner consistent with the NCP under Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

56.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. §§ 9607(a), AMPAC is strictly, and jointly and severally, liable, or is otherwise liable as provided by applicable law, to NERT for cost recovery for all necessary response costs incurred by NERT related to the Weir Project in the past, and to be incurred by NERT in the future, in connection with the AMPAC Site.

57.     NERT seeks cost recovery and/or reimbursement from AMPAC for all response costs, together with interest thereon, that NERT has incurred and will incur related to the Weir Project as a result of the release of hazardous substances from the AMPAC Site into the environment.  NERT seeks this cost recovery and/or reimbursement based on AMPAC's status as an owner and/or operator of a facility where hazardous substances and wastes were disposed pursuant to CERCLA, 42 U.S.C. §§ 9607(a).

58.     As a direct and proximate result of AMPAC's actions, NERT is entitled to recover and obtain cost recovery and/or reimbursement for all past, present, and future response costs from AMPAC pursuant to CERCLA, 42 U.S.C. § 9607(a).

59.     NERT also is entitled to interest on the amount recovered on this claim pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**SECOND CAUSE OF ACTION**

**(Contribution Under CERCLA Section 113)**

60.     Plaintiff repeats and re-alleges all of the foregoing allegations and incorporates the same by this reference.

61.     Sections 113(f)(1) and (3)(B), 42 U.S.C. §9613(f)(1) and (3)(B), provide in relevant part, that:

> Any person may seek contribution from any other person who is liable or potentially liable under Section 9607(a)….

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement….

62.     NERT has resolved its liability to the State of Nevada for matters covered by the Weir Order.

63.     AMPAC is a responsible party under CERCLA, but has not resolved its liability to NERT, the United States or the State of Nevada with respect to the Weir Project.

64.     NERT has and will incur costs as a result of the release of hazardous substances from the AMPAC Site into the environment that are greater than its allocable share of costs and damages.

65.     AMPAC is liable to NERT for those response costs paid by NERT that are in excess of its allocable share that is properly attributable to AMPAC.

66.     NERT requests that the Court determine the Parties' allocable shares with respect to response costs and damages and determine that AMPAC is liable to NERT for those response costs and damages paid or incurred by NERT that are in excess of NERT's allocable share and are properly attributable to AMPAC.

67.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) NERT is entitled to recover interest on response costs and damages it has paid or will pay in the future in excess of AMPAC's allocable share.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment for Future Response Costs)

68.     The Trustee repeats and re-alleges all of the foregoing allegations and incorporates the same by this reference.

69.     Because NERT contends that AMPAC is responsible for payment of response costs, an actual and substantial controversy exists between NERT and AMPAC regarding their respective

1    rights and obligations for the response costs that have been incurred and the response costs that will
2    be incurred to address the contamination associated with the Weir Project.  Additional response
3    costs will be needed to restore the Weir Project area to pre-project conditions, which was caused in
4    whole or part by AMPAC and the releases or threatened releases at the AMPAC Site.  No adequate
5    or speedy remedy exists for NERT in the absence of such a judicial declaration.

6    70.    Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), NERT is
7    entitled to a declaratory judgment against AMPAC that will be binding in any subsequent action to
8    recover further response costs incurred by NERT, in connection with contamination associated with
9    the Weir Project.  This determination will prevent a multiplicity of litigation.

10                           **FOURTH CAUSE OF ACTION**

11                           **(Contribution Under Nevada Law)**

12    71.    The Trustee repeats and re-alleges all of the foregoing allegations and incorporates
13    the same by this reference.

14    72.    Nevada Revised Statutes Section 17.225(1) provides "…where two or more persons
15    become jointly or severally liable in tort for the same injury to person or property … there is a right
16    of contribution among them even though judgment has not been recovered against all or any of
17    them."

18    73.    Section 17.225(1) also provides "[t]he right of contribution exists only in favor of a
19    tortfeasor who has paid more than his or her equitable share of the common liability....."

20    74.    Nevada Revised Statutes Section 17.285(4) provides that if there is no judgment,
21    the right of contribution is barred against the tortfeasor seeking contribution unless the tortfeasor
22    has "discharged by payment the common liability within the statute of limitations period applicable
23    to the claimant's right of action against him or her and has commenced an action for contribution
24    within 1 year after payment…"

25    75.    NERT is a "person" within the meaning of Section 17.225 of Nevada Revised
26    Statutes.

27    76.    AMPAC is a "person" within the meaning of Section 17.225 of Nevada Revised
28    Statutes.

1       77.    AMPAC caused hazardous substances, including perchlorate, to be released from

2   the AMPAC Site and contaminate the groundwater, and AMPAC's actions were the proximate

3   cause of the vast majority of the perchlorate contamination in the groundwater in the vicinity of the

4   Weir Project.

5       78.    As a responsible party, AMPAC is strictly, and jointly and severally, liable for the

6   release of hazardous substances from the AMPAC Site into the environment.

7       79.    AMPAC has not resolved its liability to, nor has it entered into a good faith

8   settlement pursuant to Nevada Revised Statutes Section 17.245 with NERT, the United States or

9   the State of Nevada with respect to the contamination caused by AMPAC associated with the Weir

10   Project.

11       80.    NERT has paid more than its equitable share of the common liability with respect

12   to the groundwater treatment associated with the Weir Project.

13       81.    NERT has discharged by payment the common liability between NERT and

14   AMPAC with respect to the groundwater treatment associated with the Weir Project.

15       82.    NERT is entitled to recover contribution from AMPAC for costs incurred in

16   connection with the treatment associated with the Weir Project.

17                            **FIFTH CAUSE OF ACTION**

18                       **(Restitution/Unjust Enrichment)**

19       83.    The Trustee repeats and re-alleges all of the foregoing allegations and incorporates

20   the same by this reference.

21       84.    NERT conferred a benefit on AMPAC, without AMPAC providing proper

22   compensation to NERT.

23       85.    AMPAC is responsible for treating the perchlorate-contaminated groundwater

24   emanating from the AMPAC Site, including the vast majority of the perchlorate-contaminated

25   groundwater associated with the Weir Project.

26       86.    AMPAC knew, or should have known, that the vast majority of the perchlorate-

27   contaminated groundwater associated with the Weir Project originated from the AMPAC Site.

28

1  87.  AMPAC knows that NERT has spent over $36 million to treat perchlorate-
2  contaminated groundwater associated with the Weir Project for which AMPAC is legally
3  responsible.

4  88.  AMPAC has failed and/or refused to reimburse NERT for its expenditures to treat
5  perchlorate-contaminated groundwater associated with the Weir Project that originated from the
6  AMPAC Site.

7  89.  AMPAC was unjustly enriched by NERT's treatment of the perchlorate-
8  contaminated groundwater associated with the Weir Project for which AMPAC was responsible,
9  and by unjustly benefitting from NERT's expenditure of over $36 million to treat AMPAC's
10  perchlorate-contaminated groundwater associated with the Weir Project.

11  90.  AMPAC appreciated this benefit by acknowledging that some of AMPAC's
12  perchlorate-contaminated groundwater is not captured by its treatment system and enters the Las
13  Vegas Wash in the vicinity of the Weir Project.

14  91.  AMPAC accepted and retained this benefit by allowing NERT to treat its
15  perchlorate-contaminated groundwater knowing that AMPAC's groundwater treatment system was
16  not capturing all of the contaminated groundwater originating from the AMPAC Site, and by its
17  failure to take any action, or to reimburse NERT for its expenditures, towards the treatment of the
18  perchlorate-contaminated groundwater associated with the Weir Project.

19  92.  It would be highly inequitable and unjust for AMPAC to retain the benefit of
20  NERT's groundwater treatment associated with the Weir Project without payment of the value of
21  the treatment.

22  93.  NERT is entitled to judgment against AMPAC in an amount as determined by the
23  Court, plus interest at the judgment rate and attorneys' fees and costs as permitted by law.

24  **Prayer for Relief**

25  WHEREFORE, the Trustee, on behalf of NERT, prays that judgment be entered in its favor
26  and against Defendant as follows:

27  1.  declaring AMPAC liable for all or a portion of the response costs NERT has incurred
28  and may incur in the future in connection with the Weir Project;

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

- 14 -

18524410.1/055931.0001

2.      awarding damages against AMPAC for the portion of the costs that NERT has expended (with interest thereon from the date of expenditure) in cleanup in connection with the Weir Project and in other activities preliminary and subsequent thereto;

3.      awarding NERT contribution against AMPAC for response costs and damages that it has and will incur (with interest thereon from the date of expenditure) in connection with the Weir Project that are allocable to AMPAC;

4.      awarding NERT damages against AMPAC (with interest thereon from the date of expenditure) for unjust enrichment for the value of the benefit AMPAC received through NERT's actions with respect to the Weir Project;

5.      awarding NERT its costs and attorney fees incurred in connection with this suit and in connection with the investigation and remediation conducted in connection with the Weir Project; and,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
LAS VEGAS

18524410.1/055931.0001

6.      awarding NERT such other and further relief as the Court deems appropriate.

Dated this 21st day of June, 2021.

FENNEMORE CRAIG, P.C.


By: */s/Josh Reid*
        Josh Reid
        Nevada Bar No. 7497
        300 South Fourth Street, Suite 1400
        Las Vegas, NV 89101
        Telephone: (702) 692-8000
        Facsimile: (702) 692-8099
        Email: jreid@fennemorelaw.com

        Eric L. Maassen[1]
        William J. McKenna
        Tanya C. O'Neill
        FOLEY & LARDNER LLP
        777 E. Wisconsin Ave.
        Milwaukee, WI 53202
        Telephone: (414) 271-2400
        Facsimile: (414) 297-4100
        Email:      emaassen@foley.com
                        wmckenna@foley.com
                        toneill@foley.com

        *Attorneys for Plaintiff*
        *Le Petomane XXVII, Inc., not individually, but*
        *solely in its representative capacity as trustee of*
        *the Nevada Environmental Response Trust*

---

[1] Attorneys Maassen, McKenna and O'Neill will comply with LR IA 11-2 within 14 days.

- 16 -